**OLIVAREZ MADRUGA LEMIEUX O'NEILL, LLP**
Thomas M. Madruga – SBN 160421
tmadruga@omlolaw.com
Brent J. Lehman – SBN 282149
blehman@omlolaw.com
500 South Grand Avenue – 12th Floor
Los Angeles, CA 90071
Tel: (213) 744-0099
Fax: (213) 744-0093

Attorneys for Defendant,
RUSS CRUPNICK, Inaccurately
Named as RUSSELL CRUPNICK

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| INTERPRET, LLC, a California limited liability company, | Case No.: 2:18-CV-03140-ODW(Ex) |
| | Hon. Otis D. Wright, II |
| Plaintiff, | **DEFENDANT'S MOTION TO TRANSFER VENUE;** |
| vs. | **MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF** |
| RUSSELL CRUPNICK, an individual, and DOES 1-20, inclusive, | **BRENT J. LEHMAN AND EXHIBITS THERETO** |
| Defendant. | Date:     June 18, 2018 |
| | Time:     1:30 p.m. |
| | Crtrm:    5D |
| | Complaint Filed:  March 12, 2018 |
| | Trial Date     None Set |

# TABLE OF CONTENTS

I.      PRELIMINARY STATEMENT .................................................................. 1

II.     STATEMENT OF FACTS ........................................................................ 2

III.    ARGUMENT ............................................................................................ 5

     A.      This Action Should Be Dismissed, Stayed, or Transferred Under the
          First-to-File Rule ............................................................................ 5

          1.      Chronology of Actions ........................................................ 6

          2.      Similarity of the Parties ...................................................... 6

          3.      Similarity of Issues ............................................................. 7

     B.      This Action Should Be Transferred Pursuant to Section 1404(a) .............. 8

          1.      This Action Could Have Been Brought in the EDNY .................. 10

          2.      Plaintiff's Choice of Forum Is to Be Afforded Minimal
              Deference Under the First-to-File Rule ......................................... 11

          3.      Convenience of the Non-Party Witnesses Favors Transfer
              Since It Will Avoid Duplicative Testimony and Reduce the
              Cost of Litigation ............................................................... 13

          4.      Convenience of the Parties and Respective Parties' Contacts
              with the Forum ................................................................... 14

          5.      The Location Where the Operative Events Took Place and
              Ease of Access to Evidence .................................................. 14

          6.      Location Where Relevant Agreements Were Negotiated and
              Forum Most Familiar with Governing Law .............................. 15

          7.      The Interest of Justice Will Be Served by Consolidating this
              Action into the Existing New York Action ............................... 15

IV.    CONCLUSION ........................................................................................ 17

# TABLE OF AUTHORITIES

**Federal Cases**

*A.J. Industries, Inc. v. United States Dist. Ct.*
  503 F.2d 384, 389 (9th Cir. 1974) ....................................................................... 13, 16
*Adoma v. Univ. of Phoenix, Inc.*
  711 F.Supp.2d 1142 (E.D. Cal. 2010) ........................................................................ 7
*Allen v. Cribner*
  812 F.2d 426 (9th Cir. 1987) ..................................................................................... 16
*Alltrade, Inc. v. Uniweld Products, Inc.*
  946 F.2d 622 (9th Cir. 1991) ............................................................................ 5, 7, 11
*Apollo Enter. Solutions, LLC v. Debt Resolve, Inc.*
  2007 U.S. Dist. LEXIS 42910, *3 (C.D. Cal. April 10, 2007)................................... 5
*Broad. Data Retrieval Corp. v. Sirius Satellite Radio*
  2006 U.S. Dist. LEXIS 37641, *6 (C.D. Cal. June 7, 2006)..................................... 12
*Bunker v. Union Pac. R.R. Co.*
  2006 U.S. Dist. LEXIS 97835, *2 (N.D. Cal. Jan. 23, 2006).................................... 13
*Callaway Golf Co. v. Corporate Trade, Inc.*
  2010 U.S. Dist. LEXIS 17906, *6-7 (S.D. Cal. Mar. 1, 2010).............................. 6, 14
*Cheeks v. Freeport Pancake House, Inc.*
  796 F.3d 199 (2d Cir. 2015) ..................................................................................... 17
*Church of Scientology of California v. U.S. Dep't of Army*
  611 F.2d 738 (9th Cir. 1979) ...................................................................................... 6
*Continental Grain Co. v. The Barge FPL-585*
  364 U.S. 19 (1960)............................................................................................... 9, 16
*Coxcom, Inc. v. Hybrid Patents, Inc.*
  2007 U.S. Dist. LEXIS 67168, *5 (N.D. Cal. Aug. 30, 2007). ................................. 13
*Durham Prods, Inc. v. Sterling Film Portfolio, Ltd., Series A*
  537 F.Supp. 1241 (S.D.N.Y. 1982) .......................................................................... 16
*Efg Bank AG v. Lincoln Nat'l Life Ins. Co.*
  2017 U.S. Dist. LEXIS 220049, *8 (C.D. Cal. June 8, 2017).................................. 16
*Electronics for Imaging, Inc. v. Tesseron, Ltd.*
  2008 U.S. Dist. LEXIS 10844 (N.D. Cal. Jan. 29, 2008)......................................... 16
*Fontaine v. Washington Mut. Bank, Inc.*
  2009 U.S. Dist. LEXIS 41168. *6 (C.D. Cal. Apr. 30, 2009) ................................... 10

*Goodyear Tire & Rubber Co. v. McDonnell Douglas Corp.*
   820 F.Supp. 503 (C.D. Cal. 1992). .................................................................. 9
*Guingao v. Datalogix Tex. Inc.*
   2014 U.S. Dist. LEXIS 197131, *2 (C.D. Cal. June 5, 2014) ................................... 14
*Gunthy-Renker Fitness, LLC v. Icon Health & Fitness, Inc.*
   179 F.R.D. 264 (C.D. Cal. 1998) ............................................................ 6, 11
*Hansell v. TracFone Wireless, Inc.*
   2013 U.S. Dist. LEXIS 167423, *8-9 (N.D. Cal. 22, 2013)................................... 12
*Hogan v. ADT, LLC,*
   2013 U.S. Dist. LEXIS 197853, *3 (C.D. Cal. May 23, 2013)................................ 14
*Italian Colors Rest. V. Am. Express Co.*
   2003 U.S. Dist. LEXIS 20338, *5 (N.D. Cal. Nov. 10, 2003) ................................. 15
*Jones v. GNC Franchising, Inc.*
   211 F.3d 495 (9th Cir. 2000) .......................................................... 9, 10, 14, 15
*Kohn Law Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*
   787 F.3d 1237 (9th Cir. 2015) ................................................................. 6, 8
*London and Hull Mar. Ins. Co. Ltd. v. Eagle Pac. Ins. Co.*
   1996 U.S. Dist. LEXIS 22893, *3 (N.D. Cal. 1996) ........................................... 15
*Los Angeles Mem. Coliseum Comm. v. National Football League*
   89 F.R.D. 497(C.D. Cal. 1981), *aff'd*, 726 F.2d 1381 (9th Cir. 1984)...................... 10
*Metz v. United States Life Ins. Co.*
   674 F.Supp.2d 1141 (C.D. Cal. 2009) ......................................................... 12
*Murphy v. Schneider Nat'l, Inc.*
   362 F.3d 1133 (9th Cir. 2004) ................................................................. 10
*Northwest Airlines, Inc. v. American Airlines, Inc.*
   989 F.2d 1002, 1006 (8th Cir. 1993) ........................................................... 6
*Pac. Coast Breaker, Inc. v. Connecticut Elec., Inc.*
   2011 U.S. Dist. LEXIS 56026, *3 (E.D. Cal. May 24, 2011) ................................... 7
*Pacesetter Systems, Inc. v. Medtronic, Inc.*
   678 F.2d 93 (9th Cir. 1982) ................................................................. 5, 6
*Regents of the University of California v. Eli Lilly & Co.*
   119 F.3d 1559, 1565 (Fed. Cir. 1997) ......................................................... 16
*Roling v. E*Trade Sec., LLC*
   756 F.Supp.2d 1179 (N.D. Cal. 2010).......................................................... 9
*Royal Queentex Enters. v. Sara Lee Corp.*
   2000 U.S. Dist. LEXIS 10139, *10 (N.D. Cal. Mar. 1, 2000). ............................... 11

*Signal IP, Inc. v. Volkswagen Group of Am., Inc.*
   2015 U.S. Dist. LEXIS 136447, *19 (C.D. Cal. Jan. 20, 2015) .................................. 13
*Stabencheck v. Safeway Stores, Inc.*
   2012 U.S. Dist. LEXIS 168965, *11 (N.D. Cal. Nov. 28, 2012) ............................. 12
*Van Dusen v. Barrack*
   376 U.S. 612 (1964) ............................................................................................. 9
*Ventress v. Japan Airlines*
   486 F.3d 1111 (9th Cir. 2007) ............................................................................ 9
*Wiley v. Trendwest Resorts, Inc.*
   2005 U.S. Dist. LEXIS 3893, *5 (N.D. Cal. 2005) ............................................. 11, 16
*Williams v. WinCo Foods LLC*
   2013 U.S. Dist. LEXIS 4185, *19 (E.D. Cal. Jan. 10, 2013) .................................... 12
*Zimmer v. Dometic Corp.*
   2018 U.S. Dist. LEXIS 30389, *11 (C.D. Cal. Feb. 22, 2018) .................................. 8

**Federal Statutes**

28 U.S.C. § 1332 ....................................................................................................... 3
28 U.S.C. § 1391(b) ........................................................................................... 10, 11
28 U.S.C. § 1404(a) ......................................................... 1, 2, 8, 9, 10, 12, 16
28 U.S.C. § 1441 ....................................................................................................... 3
28 U.S.C. § 1446 ....................................................................................................... 3

Defendant Russ Crupnick ("Crupnick" or "Defendant"), by and through his attorneys, hereby moves to transfer this case to the United States District Court of the Eastern District of New York (the "EDNY") under the first-to-file rule and pursuant to 28 U.S.C. § 1404(a) ("Section 1404(a)").

## I.  PRELIMINARY STATEMENT

Defendant respectfully submits this memorandum in support of its motion to transfer this action to the EDNY under the well-established first-to-file rule or, alternatively, pursuant to 28 U.S.C. § 1404(a).

This action represents the epitome of forum shopping.  In the face of an action pending in the EDNY, between ***the same parties***, arising out of the ***same operative facts and brief employment relationship***, the entirety of which was performed by Defendant ***in New York*** ("EDNY Action"), rather than asserting its claims as counterclaims, Plaintiff instead commenced this action in the State of California.  What is worse, this is not the first attempt by this Plaintiff to forum shop these claims out of their proper venue, having already unsuccessfully attempted to join these claims against Defendant to an arbitration pending before JAMS.  Plaintiff's conduct is clearly designed solely to harass Defendant, one of its former employees and, in fact, is the subject of a retaliation claim pending in the EDNY.  Notwithstanding that the parties' dispute is properly heard in the EDNY, and Plaintiff has raised no material challenge to venue or jurisdiction in that action, Plaintiff is now on record with the position that it is willing to litigate these claims either here or before JAMS – essentially an "anywhere but the EDNY" position.  This Court should, respectfully, not countenance such patent forum shopping.

In addition to avoiding such forum shopping, transfer of this action is warranted under the "first-to-file rule."  Undoubtedly, both this and the EDNY Action will involve the same discovery, witnesses, and evidence, and it would be more appropriate for all parties to the dispute to be brought into a single proceeding.  Plaintiff's dual litigation tactic only serves to greatly increase the cost of litigation for Defendant in both suits, as

well as risk the entry of inconsistent judgments, unreasonably burden the witnesses, and waste valuable judicial resources.  Once transferred, Defendant will move to have this case consolidated with the EDNY Action and, through consolidation, the cost of this litigation and the burden to the witnesses and to the Court will be greatly reduced.

Additionally, all relevant factors concerning the convenience of the parties and witnesses, and the interests of justice, weigh heavily in favor of a transfer to the EDNY pursuant to Section 1404(a).  As set forth below, nearly all of the alleged acts or omissions complained of in Plaintiff's Complaint purportedly took place in the State of New York.  Plaintiff's choice of forum is entitled to no deference, in view of the first-filed EDNY Action, and Plaintiff's own admissions and conduct.  The private and public convenience factors, as well as the interest of justice, all suggest that this case belongs in the EDNY.  Accordingly, the Court, respectfully, should transfer this action.

## II.   STATEMENT OF FACTS

Plaintiff is a limited liability company organized in the State of California. (Compl. ¶ 24.)  Defendant is an individual residing in the State of New York.  (Compl. ¶ 25.)  Plaintiff and non-party MusicWatch Inc. ("MusicWatch"), an entity solely owned and operated by Defendant, executed a document labelled "consulting agreement" dated May 23, 2017 (the "Agreement").[1]  (Compl. ¶ 1.)  The Agreement specifically provides that it is to be construed pursuant to the laws of the State of New York.  (Ex. 1, Agreement, ¶ 20.)

On December 1, 2017, Defendant commenced the EDNY Action against Plaintiff and its principals, captioned *Russ Crupnick v. Interpret LLC, et al.,* Case No. 17-CV-07018 (DRH) (SIL), asserting claims violations of the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") by reason of Plaintiff's misclassification of Defendant as an independent contractor.[2]  On March 7, 2018, Plaintiff filed its Answer in the EDNY Action, but did not assert any counterclaims

---

[1] A copy of the consulting agreement dated May 23, 2017 between Plaintiff and MusicWatch is attached hereto as Exhibit 1.
[2] A copy of the complaint filed in the EDNY Action is attached hereto as Exhibit 2.

against Defendant.  Additionally, Plaintiff has not raised any affirmative defenses to venue or personal jurisdiction in the EDNY.

Despite having the ability to assert its claims against Defendant in a single action, Plaintiff chose to bring duplicative litigation in a separate venue.  Within *days* of answering the Complaint in the EDNY Action, Plaintiff, in a blatant act of retaliation, filed this suit in Los Angeles County Superior Court against Defendant, alleging various claims all arising out of Defendant's brief employment by Plaintiff.  On March 22, 2018, Defendant amended his complaint in the EDNY Action to assert claims for federal and state law retaliation against Plaintiff by reason of Plaintiff's commencement of this action.[3]  On April 13, 2018, Defendant removed this action to this Court pursuant to 28 U.S.C. § 1332, 1441, and 1446.

Tellingly, commencement of this action was not Plaintiff's first attempt to forum shop this dispute out of New York.  Prior to this action, Plaintiff improperly mis-joined claims, virtually identical to those asserted in this action, against Defendant to arbitration proceedings that it had commenced before JAMS.  Only after Defendant was forced to bring an action before a New York State court to stay such arbitration, and the entry of a temporary restraining order by the New York State court, did Plaintiff agree to voluntarily discontinue its arbitration claims against Defendant.  Apparently not giving up on its efforts to evade complete determination of the parties' dispute by the EDNY, Plaintiff subsequently commenced the present action.

Even a cursory review of the pleadings makes clear that the EDNY Action and this action involve identical factual and legal issues and arise from the same factual circumstances.  In the EDNY Action, Defendant's claims stem from Plaintiff's misclassification of Defendant as an independent contractor during the parties' relatively brief relationship.  (*See generally* Ex. "3", EDNY Amended Complaint.)  At the heart of such misclassification is the Agreement entered into between MusicWatch

---

[3]  A copy of the amended complaint filed in the New York Action is attached hereto as Exhibit 3 and is hereinafter referred to as the "EDNY Amended Complaint."

and Plaintiff, from which all of Plaintiff's claims in this action derive.  (*See generally* Complaint.)  Beyond the Agreement, Plaintiff's Complaint references a number of other factual allegations, all of which are at issue in the EDNY Action, including:

- Defendant's status as an employee of Plaintiff;
- Plaintiff's contention that Defendant was an employee of MusicWatch;
- Plaintiff's non-payment of Defendant's consulting fee and failure to reimburse Defendant for payments made to vendors on Plaintiff's behalf and for Defendant's travel and other expenses;
- The parties' performance of contractual or other duties owed.

(*See generally* Complaint.)

The overlap between the actions is made even more apparent by Plaintiff's detailed description of the parties' initial employment discussions in its Complaint. (Complaint, ¶ 7.)  It would be preposterous for Plaintiff to now claim that this action does not involve the exact facts and circumstances before the court in the EDNY Action.  Significantly, Plaintiff's commencement of this action itself is a basis for Defendant's retaliation claims in the EDNY Action, such that the court there will be required to weigh Plaintiff's motive in filing the Complaint.

Given the similarities between the actions, it is anticipated that Plaintiff intends to call the same non-party witnesses identified in Plaintiff's initial disclosures in the EDNY Action in this action, as well.[4]  The following non-party witnesses have been identified by Plaintiff in those Initial Disclosures as having knowledge regarding the "independent contractor" aspect of the parties' dispute: (i) The NPD Group of Port Washington, New York; (ii) Coleman Insights of Morrisville, North Carolina; (iii) Warren Kurtzman of Morrisville, North Carolina; (iv) Josh Bell of Raleigh, North Carolina; (v) Meghan Campbell of Morrisville, North Carolina; (vi) Country Music Association ("CMA") of Nashville, Tennessee; (vii) Pandora Media Inc. ("Pandora") of

---

[4]  A copy of Interpret, LLC's Initial Disclosures dated April 13, 2018 (the "Initial Disclosures") are attached hereto as Exhibit 4.

Oakland, California; (viii) Spotify USA Inc. ("Spotify") of New York, New York; (ix) Recording Industry Association of America ("RIAA") of Washington D.C.; (x) Sony Music Entertainment of New York, New York; (xi) Universal Music Group of New York, New York; (xii) Warner Music Group of New York, New York; (xiii) Katie Dombrowski of New York; and (xiv) Jodie Crupnick of New York.  (See Ex. "4", Initial Disclosures.)  While at least fifty percent (50%) of the anticipated non-party witnesses reside in the State of New York, only one (1) identified non-party witness, a large company, appears to reside in the State of California.

The fraud alleged by Plaintiff in the Complaint is *entirely* centered around MusicWatch's clients and corresponding revenue.  These *exact* clients (i.e., CMA, Pandora, Spotify, RIAA) are the above-stated non-party witnesses identified in Plaintiff's Initial Disclosures.  As such, it is evident that Plaintiff intends to rely on identical witnesses, facts, and testimony in both actions.

III.   **ARGUMENT**

    A.   **This Action Should Be Dismissed, Stayed, or Transferred Under the First-to-File Rule**

Under the well-established "first-to-file rule," a district court may transfer, stay, or dismiss an action when a similar complaint has already been filed in another district court." *See Alltrade, Inc. v. Uniweld Products, Inc*., 946 F.2d 622, 623 (9th Cir. 1991). The rule follows the "generally recognized doctrine of federal comity which permits a district court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district." *Pacesetter Systems, Inc. v. Medtronic, Inc*., 678 F.2d 93, 94-95 (9th Cir. 1982); see also *Apollo Enter. Solutions, LLC v. Debt Resolve, Inc*., 2007 U.S. Dist. LEXIS 42910, *3 (C.D. Cal. April 10, 2007) ("Where two actions involving overlapping issues and parties are pending in two federal courts, 'there is a strong presumption across the federal circuits that favors the forum of the first-filed suit under the first-filed rule.'").  The first-to-file rule "gives priority, for purposes of choosing among possible venues when parallel litigation has

been instituted in separate courts, to the party who first establishes jurisdiction." *See Callaway Golf Co. v. Corporate Trade, Inc.*, 2010 U.S. Dist. LEXIS 17906, *6-7 (S.D. Cal. Mar. 1, 2010) (quoting *Northwest Airlines, Inc. v. American Airlines, Inc.*, 989 F.2d 1002, 1006 (8th Cir. 1993)).  The rule "serves the purpose of promoting efficiency well and should not be disregarded lightly." *Church of Scientology of California v. U.S. Dep't of Army*, 611 F.2d 738, 750 (9th Cir. 1979).  The rule is primarily meant to alleviate the burden placed on the federal judiciary by duplicative litigation and to prevent the embarrassment of conflicting judgments.  *Id.*

"[U]nless compelling circumstances justify departure from the rule, the first-filing party should be permitted to proceed without concern about a conflicting order being issued in the later-filed action." *Gunthy-Renker Fitness, LLC v. Icon Health & Fitness, Inc.*, 179 F.R.D. 264, 269 (C.D. Cal. 1998); *see also Pacesetter Systems*, 678 F.2d at 95 (noting that "[n]ormally sound judicial administration would indicate that when two identical actions are filed in courts of concurrent jurisdiction, the court which first acquired jurisdiction should try the lawsuit and *no purpose would be served by proceeding with a second action*.") (emphasis added).  To determine whether the first-to-file rule applies, courts analyze three factors: "chronology of lawsuits, similarity of the parties, and similarity of the issues." *Kohn Law Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*, 787 F.3d 1237, 1240 (9th Cir. 2015).

### 1.      Chronology of Actions

The first factor that must be satisfied in order for the first-to-file rule to apply is the chronology of the actions.  The action in the transferee district court must have been filed prior to the action in the transferor district court.  Here, Defendant filed the EDNY Action on December 1, 2017.  Plaintiff did not file this action until on or around March 12, 2018.  Thus, the first factor regarding the chronology of actions is satisfied.

### 2.      Similarity of the Parties

The second factor considered is whether the parties in each case are similar. Courts have held that "the first-to-file rule *does not require* strict identity of the parties,

but rather *substantial similarity*." *Adoma v. Univ. of Phoenix, Inc.*, 711 F.Supp.2d 1142, 1149 (E.D. Cal. 2010) (emphasis added); *see also Pac. Coast Breaker, Inc. v. Connecticut Elec., Inc.*, 2011 U.S. Dist. LEXIS 56026, *3 (E.D. Cal. May 24, 2011) ("The rule is satisfied if some [of] the parties in one matter are also in the other matter, regardless of whether there are additional, unmatched parties in one or both matters."). From the face of both complaints, it is clear that the parties to both actions are, for all intents and purposes, identical.  Indeed, the only difference between the named parties in both suits is the inclusion of Plaintiff's principals, Andrew Wing, Michael Cai, and Grant Johnson, as defendants in the EDNY Action.  *See Alltrade, Inc.*, 945 F.2d at 625 (affirming district court's decision not to hear a second-filed case under the first-to-file rule even though the first-filed case contained a party not named in the second case). Accordingly, the second factor regarding the similarity of parties is also met.

### 3.    Similarity of Issues

The issues involved in this action and the EDNY Action are fundamentally identical, creating a significant risk of conflicting court judgments . Both actions arise out of Defendant's employment with Plaintiff, a relationship which lasted only eight (8) months.  Because Defendant's status as an employee is in dispute, both complaints require judicial determination of whether Defendant was misclassified as an independent contractor and by extension, the validity and meaning of the Agreement between MusicWatch and Plaintiff.  Significantly, in this action, all of Plaintiff's claims are grounded on its assumption that a valid contract exists between MusicWatch and Plaintiff and that Defendant, or MusicWatch, was an independent contractor of Plaintiff.  These exact facts are in dispute in the EDNY Action, and that court will be required to reach a determination of these issues in adjudicating Defendant's statutory employment claims.  This same determination would be duplicated here, perhaps with inconsistent results, if the present action is permitted to move forward.

Unquestionably, both actions derive from the facts and circumstances surrounding Defendant's employment with Plaintiff.  Tellingly, within the Complaint,

Plaintiff made the decision to enumerate the parties' initial employment discussions –
effectively, an admission of this action's ties to Defendant's employment claims in the
EDNY Action.  Moreover, although Plaintiff alleges its payment of all consulting fees
and expenses owed under the Agreement, these exact amounts are sought as damages
by Defendant in the EDNY Action.  Based on the foregoing, it is evident that both
actions involve substantially similar issues, and the third prong for application of the
first-to-file rule is satisfied. *See Kohn Law Grp., Inc.*, 787 F.3d at 1240 ("To determine
whether two suits involve substantially similar issues, we look at whether there is
'substantial overlap' between the two suits."); *see also Zimmer v. Dometic Corp.*, 2018
U.S. Dist. LEXIS 30389, *11 (C.D. Cal. Feb. 22, 2018) ("While this action raises some
unique state law claims, the factual allegations giving rise to these claims and the
central theories of liability are identical to those in [the first-filed action.]").

A transfer of this case to the EDNY will serve the purposes of the first-to-file
rule.  If this action were allowed to run parallel to the EDNY Action and remain
pending in this Court, waste of judicial resources would be unavoidable and the risk of
"the embarrassment of conflicting judgments" is immediately obvious.  Significant
judicial efficiency will be gained by having one court manage the discovery in both
actions.  Moreover, both actions are at the discovery stage, such that transfer to the
EDNY is unlikely to significantly hinder the progress of either case.  All three (3)
factors of the first-to-file determination favor application of the rule in this action, and
there is no applicable exception to the first-to-file rule.  *See Kohn Law Grp., Inc.*, 787
F.3d at 1237 ("the first-to-file rule requires only substantial similarity of parties" and
"[t]he issues in both cases also need not be identical, only substantially similar.").
Accordingly, this action should be transferred to the EDNY under the first-to-file rule.

**B.    This Action Should Be Transferred Pursuant to Section 1404(a)**

Pursuant to 28 U.S.C. § 1404(a), "for the convenience of parties and witnesses, in
the interest of justice, a district court may transfer any civil action to any other district
or division where it might have been brought."  *Id.*; *see also Ventress v. Japan Airlines*,

486 F.3d 1111, 1118 (9th Cir. 2007).  A district court has broad discretion in determining whether to transfer venue.  *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000).  The purpose of this Section is "to prevent the waste 'of time, energy, and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'"  *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal citations omitted) (quoting *Continental Grain Co. v. The Barge FPL-585*, 364 U.S. 19, 26-27 (1960)).  By enacting Section 1404(a), Congress intended to authorize the easy transfer of actions to a more convenient forum, often as a simple "housekeeping measure."  *See id.* at 636-37.

"This transfer power is, however, expressly limited by the final clause of § 1404(a) restricting transfer to those federal districts in which the action 'might have been brought.'"  *Id.* at 616 (quoting 28 U.S.C. § 1404(a)).  To support a motion for transfer, the moving party must show "(1) that venue is proper in the transferor district; (2) that the transferee district is one where the action might have been brought; and (3) that the transfer will serve the convenience of the parties and witnesses and will promote the interest of justice."  *Goodyear Tire & Rubber Co. v. McDonnell Douglas Corp.*, 820 F.Supp. 503, 506 (C.D. Cal. 1992).  Courts utilize a two-step analysis to determine if venue is proper.  "The threshold question under Section 1404(a) requires the court to determine whether the case could have been brought in the forum to which the transfer is sought."  *Roling v. E*Trade Sec., LLC*, 756 F.Supp.2d 1179, 1184 (N.D. Cal. 2010).  "If venue would be appropriate in the would-be transferee court, then the court must make an 'individualized, case-by-case consideration of convenience and fairness.'"  *Id.* (quoting *Jones*, 211 F.3d at 498).

The Ninth Circuit has set forth ten permissive factors that a court might consider: (1) the location where the relevant agreements were negotiated and executed; (2) the state that is most familiar with the governing law; (3) the plaintiff's choice of forum; (4) the respective parties' contacts with the forum; (5) the contacts relating to the plaintiff's cause of action in the chosen forum; (6) the differences in the costs of

1  litigation in the two forums; (7) the availability of compulsory process to compel

2  attendance of non-party witnesses; (8) the ease of access to sources of proof; (9) the

3  presence of a forum selection clause; and (10) the public policy of the forum state.

4  *Jones*, 211 F.3d at 498-99.  In reviewing a motion to transfer venue, a court may

5  consider facts outside of the pleadings and the pleadings need not be accepted as true.

6  *Cf. Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1137 (9th Cir. 2004).  Once it is

7  established that the action could have been brought in the proposed transferee forum,

8  the court must determine whether "the convenience of the parties," "convenience of the

9  witnesses," and "the interests of justice" make transfer appropriate.  28 U.S.C.

10  § 1404(a); *Los Angeles Mem. Coliseum Comm. v. National Football League*, 89 F.R.D.

11  497, 499 (C.D. Cal. 1981), *aff'd*, 726 F.2d 1381 (9th Cir. 1984).

### 1.   This Action Could Have Been Brought in the EDNY

13  The threshold question in the Section 1404(a) analysis is whether the action

14  "might have been brought in the proposed transferee district."  *See* 28 U.S.C. § 1404(a).

15  Whether the claim could have been originally brought in a different district depends on

16  whether the transferee court would have had complete personal jurisdiction over the

17  defendants, subject matter jurisdiction over the claims, and proper venue. *See Fontaine*

18  *v. Washington Mut. Bank, Inc.*, 2009 U.S. Dist. LEXIS 41168. *6 (C.D. Cal. Apr. 30,

19  2009).  Here, there is no dispute that the EDNY would have the same subject matter

20  jurisdiction over the claims as the Central District of California.

21  Similarly, there is no question that venue is proper in the EDNY.  Under 28

22  U.S.C. § 1391(b), a civil action may be brought in:

23      (1)   a judicial district in which any defendant resides, if all

24            defendants are residents of the State in which the district

25            is located;

26      (2)   a judicial district in which a substantial part of the events

27            or omissions giving rise to the claim occurred, or a

28

1 | substantial part of property that is the subject of the
2 | action is situated; or
3 | (3) | if there is no district in which an action may otherwise be
4 | brought as provided in this section, any judicial district in
5 | which any defendant is subject to the court's personal
6 | jurisdiction with respect to such action.
7 | *Id.*

8 |      Where, as here, an action is based on diversity, venue is proper in a district where
9 | any defendant resides, if all defendants reside in the same state.  28 U.S.C. § 1391(b).
10 | Defendant resides in Suffolk County, New York, within the EDNY.  (*See* Complaint
11 | ¶ 25.)  As such, the EDNY has personal jurisdiction and venue necessary to hear this
12 | case.  Furthermore, Plaintiff has acknowledged that personal jurisdiction and venue are
13 | proper in the EDNY, as Plaintiff has not objected to either in the EDNY Action.

14 | **2.** | **Plaintiff's Choice of Forum Is to Be Afforded Minimal**
15 | **Deference Under the First-to-File Rule**

16 |      While deference is normally given to a plaintiff's choice of venue in connection
17 | with an application for transfer under Section 1404(a), such deference is not afforded
18 | where the first-to-file rule applies.  *See Gunthy-Renker Fitness LLC v. Icon Health &*
19 | *Fitness*, 179 F.R.D. 264, 269 (C.D. Cal. 1998) ("When two actions involving similar
20 | parties and issues are commenced in separate forums, … preference is given to the first-
21 | filed plaintiff's choice of forum under the 'first-to-file' rule."); *see also Wiley v.*
22 | *Trendwest Resorts, Inc.*, 2005 U.S. Dist. LEXIS 3893, *5 (N.D. Cal. 2005) (the first-to-
23 | file rule is "typically invoked to protect the plaintiff's choice of forum in cases where
24 | the defendant has subsequently filed an identical or related suit in a different forum.")
25 | Additionally, the Ninth Circuit has established that courts should disregard a plaintiff's
26 | forum choice where the suit is a result of forum shopping.  *See Alltrade, Inc.*, 946 F.2d
27 | 622, 628 (9th Cir. 1991); *see also Royal Queentex Enters. v. Sara Lee Corp.*, 2000 U.S.
28 | Dist. LEXIS 10139, *10 (N.D. Cal. Mar. 1, 2000).  The factors of conserving judicial

resources and discouraging forum shopping can tip the balance *heavily* in favor of transfer. *See Williams v. WinCo Foods LLC*, 2013 U.S. Dist. LEXIS 4185, *19 (E.D. Cal. Jan. 10, 2013) (noting that transfer will discourage forum shopping and respect principles of comity); *see also Broad. Data Retrieval Corp. v. Sirius Satellite Radio*, 2006 U.S. Dist. LEXIS 37641, *6 (C.D. Cal. June 7, 2006).

Additionally, deference to the plaintiff's choice of forum should be minimized where the operative facts in the action have not occurred within the forum selected by plaintiff. *See Metz v. United States Life Ins. Co.*, 674 F.Supp.2d 1141, 1146 (C.D. Cal. 2009); *see also Stabencheck v. Safeway Stores, Inc.*, 2012 U.S. Dist. LEXIS 168965, *11 (N.D. Cal. Nov. 28, 2012) ("Deference to the plaintiff's forum should be minimized where the forum selected by plaintiffs is not the situs of material events.").

Here, the first-to-file rule acts to diminish any preference that might normally be afforded Plaintiff's chosen forum under a Section 1404(a) analysis. Plaintiff brought this action only *after* Defendant filed suit in the EDNY and within days of Plaintiff filing of its answer in the EDNY Action, without the assertion of any counterclaims. Because Defendant was first to file, it is Defendant's choice of forum in the EDNY Action that should receive deference under the first-to-file rule. *See, e.g.*, *Hansell v. TracFone Wireless, Inc.*, 2013 U.S. Dist. LEXIS 167423, *8-9 (N.D. Cal. 22, 2013). Additionally, deference to Plaintiff's choice of forum should be further minimized because all operative facts relevant to the dispute are alleged to have occurred in the State of New York, where Defendant resides. *See Metz* , 674 F.Supp.2d at 1146.

Significantly, Plaintiff's own conduct and admissions demonstrate that its "choice of forum" is, in reality, nothing more than its desire to evade adjudication by the EDNY. During a recent discovery dispute between MusicWatch and Plaintiff in a pending arbitration before JAMS, Plaintiff, in a submission to the arbitrator, specifically averred **with respect to this Action** that "[i]f Mr. Crupnick now objects to 'duplicative' litigation, he is welcome to rejoin this arbitration." This statement alone evinces Plaintiff's indifference to this selected forum, as well as the lack of legitimacy of

Plaintiff's claims in this action.  As such, the choice of forum factor heavily weighs in favor of transfer to the EDNY.

### 3.  Convenience of the Non-Party Witnesses Favors Transfer Since It Will Avoid Duplicative Testimony and Reduce the Cost of Litigation

Courts look to who the witnesses are, where they are located, what their testimony will be, and why such testimony is relevant.  *A.J. Industries, Inc. v. United States Dist. Ct.*, 503 F.2d 384, 389 (9th Cir. 1974).  California courts have held that "the convenience of third-party witnesses [is] often the most significant factor" when considering the convenience of the parties.  *See Coxcom, Inc. v. Hybrid Patents, Inc.*, 2007 U.S. Dist. LEXIS 67168, *5 (N.D. Cal. Aug. 30, 2007).  Litigation costs are reduced when venue is located near the most witnesses expected to testify.  *See Bunker v. Union Pac. R.R. Co.*, 2006 U.S. Dist. LEXIS 97835, *2 (N.D. Cal. Jan. 23, 2006).

There is likely to be a substantial overlap in witnesses for this action and the EDNY Action.  In its Initial Disclosures in the EDNY Action, Plaintiff has identified fourteen (14) non-party witnesses that are likely to be called as witnesses in this action as well.  Of those non-party witnesses, seven (7) reside in the State of New York, with only one (1) non-party witness apparently residing in the State of California.  Given the high number of non-party witnesses located in the State of New York, and because it would be inconvenient and burdensome to require the non-party witnesses to provide duplicative testimony in both actions, this action should be transferred.  As to the differences in the costs of litigation in the two forums, this factor weighs in favor of transfer to the EDNY where a greater number of the non-party witnesses are located.

Additionally, the availability of compulsory process favors transfer to the EDNY because such venue has a greater ability to subpoena more non-party witnesses than the Central District of California.  *See Signal IP, Inc. v. Volkswagen Group of Am., Inc.*, 2015 U.S. Dist. LEXIS 136447, *19 (C.D. Cal. Jan. 20, 2015) (noting that defendant was more likely to be prejudiced at trial by the unavailability of compulsory process

should the action remain in the transferor forum).  Accordingly, the factors of convenience to non-party witnesses and the availability of compulsory process also favor transfer.

### 4.    Convenience of the Parties and Respective Parties' Contacts with the Forum

The convenience of the parties also favors transfer to the EDNY.  Defendant resides within the EDNY and, accordingly, the operative documents that may be relevant to this dispute exist in New York with Defendant.  Additionally, Defendant has no meaningful connection to this District and his direct contacts with the forum are limited.  Additionally, Defendant did not negotiate or perform his employment agreement with Plaintiff in the State of California.  By commencing this action, rather than assert counterclaims against Defendant in the EDNY Action, Plaintiff sought to burden Defendant with the inconvenience of litigating in a foreign district.

Furthermore, the burden on Defendant, as an individual, of litigating in this District would be far greater than the burden on Plaintiff, as an entity, to appear in the EDNY.  *See Callaway Golf Co. v. Corporate Trade, Inc.*, 2010 U.S. Dist. LEXIS 17906, *16-17 (S.D. Cal. Mar. 1, 2010).  Courts in this district recognize that corporations are better equipped than an ordinary individual with limited financial means to adjust to the increased litigation costs stemming from litigation in a foreign forum.  *See Guingao v. Datalogix Tex. Inc.*, 2014 U.S. Dist. LEXIS 197131, *2 (C.D. Cal. June 5, 2014); *see also Hogan v. ADT, LLC*, 2013 U.S. Dist. LEXIS 197853, *3 (C.D. Cal. May 23, 2013).  Plus, Plaintiff and its principals will already be compelled to appear and litigate in the EDNY, as they are all parties to the EDNY Action.

### 5.    The Location Where the Operative Events Took Place and Ease of Access to Evidence

There are three *Jones* factors that focus on the location of events and evidence upon which the claims are based, including: (1) the location where operative events took place, (2) the contacts relating to the plaintiff's cause of action in the chosen

forum, and (3) the ease of access to sources of proof.  *Jones*, 211 F.3d at 498-99.
Although developments in electronic conveyance have reduced the cost of document
transfer, costs of litigation can still be substantially lessened if the venue is in the
district in which most of the documentary evidence is stored.  *See Italian Colors Rest. v.
Am. Express Co.*, 2003 U.S. Dist. LEXIS 20338, *5 (N.D. Cal. Nov. 10, 2003).  Here,
the alleged statements that form the basis of the Complaint occurred at Defendant's
office within the EDNY.  Because all pertinent events occurred in the EDNY, most, if
not all, of the relevant documents and evidence necessary to adjudicate Plaintiff's
claims will be in the State of New York, further warranting transfer.

### 6. Location Where Relevant Agreements Were Negotiated and Forum Most Familiar with Governing Law

Here, the Agreement between MusicWatch and Plaintiff, which underlies a
majority of Plaintiff's claims, was negotiated and executed by Defendant in the State of
New York.  Additionally, throughout the parties' relationship, it was always anticipated
that Defendant's contemplated performance of his employment obligations owed to
Plaintiff would be performed in the State of New York.  Furthermore, the Agreement
between Plaintiff and MusicWatch, which is unquestionably at issue in this action,
identifies New York law as governing.  This factor also weighs in favor of transfer.

### 7. The Interest of Justice Will Be Served by Consolidating this Action into the Existing New York Action

The "interest of justice" consideration is the most important factor a court must
consider, and may be decisive in a transfer motion even when all other factors point the
other way.  *London and Hull Mar. Ins. Co. Ltd. v. Eagle Pac. Ins. Co.*, 1996 U.S. Dist.
LEXIS 22893, *3 (N.D. Cal. 1996) ("A major consideration under this factor is the
desire to avoid multiplicity of litigation from a single transaction.").  Additionally,
"[c]onsideration of the interest of justice, which includes judicial economy, 'may be
determinative to a particular transfer motion, even if the convenience of the parties and
witnesses might call for a different result.  *Regents of the University of California v. Eli*

1   *Lilly & Co.*, 119 F.3d 1559, 1565 (Fed. Cir. 1997) (citing *Allen v. Cribner*, 812 F.2d
2   426, 426-37 (9th Cir. 1987)).

3        The pendency of related actions in the transferee forum is a *significant* factor in
4   considering the interest of justice factor.  *A.J. Industries, Inc. v. United States Dist.*
5   *Court for Cen. Dist.*, 503 F.2d 384, 389 (9th Cir. 1974) (holding "feasibility of
6   consolidation" with action in transferee court is "significant factor in a transfer
7   decision"); *see also Efg Bank AG v. Lincoln Nat'l Life Ins. Co.*, 2017 U.S. Dist. LEXIS
8   220049, *8 (C.D. Cal. June 8, 2017); *see also Wiley v. Trendwest Resorts, Inc.*, 2005
9   U.S. Dist. LEXIS 3893 at *9 ("Since consolidation cannot occur until both actions are
10  pending in the same jurisdiction, this factor weighs heavily in favor of granting the
11  instant Motion to Transfer Venue.").  "Litigation of related claims in the same tribunal
12  is strongly favored because it facilitates efficient, economical and expeditious pre-trial
13  proceedings and discovery and avoids duplicitous litigation and inconsistent results."
14  *Wiley v. Trendwest Resorts, Inc.*, 2005 U.S. Dist. LEXIS 3893 at *9 (quoting *Durham*
15  *Prods, Inc. v. Sterling Film Portfolio, Ltd., Series A*, 537 F.Supp. 1241, 1243 (S.D.N.Y.
16  1982)).  To permit a situation in which two cases involving precisely the same issues
17  are simultaneously pending in different district courts leads to the wastefulness of time,
18  energy and money that Section 1404(a) was designed to prevent.  *See Continental*
19  *Grain*, 364 U.S. at 26.

20        Accordingly, the question for the Court is not "whether this action would be
21  more conveniently litigated in [the alternative forum], but whether it would be more
22  convenient to litigate the [two] actions separately or in a coordinated fashion."
23  *Electronics for Imaging, Inc. v. Tesseron, Ltd.*, 2008 U.S. Dist. LEXIS 10844 (N.D.
24  Cal. Jan. 29, 2008) (transferring second-filed action to district where first-filed action
25  was pending and finding that the interest of justice and judicial economy would be
26  promoted by transferring the case to prevent duplicative and unnecessary effort).  Given
27  the substantial overlap in issues, witnesses, and documents, the interest of justice
28  requires that this action and the EDNY Action should be litigated together.  Moreover, a

transfer of this action to the EDNY will promote the goal of consolidating the two actions before one tribunal.

Additionally, the transfer of this action further promotes judicial economy in that the EDNY has a greater oversight responsibility and an enhanced role with respect to Defendant's FLSA claims, which will be subject to judicial approval in the event of settlement between the parties. *See Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015) ("Examining the basis on which district courts recently rejected several proposed FLSA settlements highlights the potential for abuse in such settlements, and underscores why judicial approval in the FLSA setting is necessary."). Undoubtedly, the EDNY is better equipped to scrutinize any such settlement and apply such Second Circuit precedent.

## IV.   CONCLUSION

For the forgoing reasons, Defendant respectfully requests that the Court transfer the above-captioned case to the United States District Court for the Eastern District of New York, or stay this action.


Dated:  May 14, 2018                    **OLIVAREZ MADRUGA LEMIEUX O'NEILL, LLP**

By:   /s/  Brent J. Lehman
　　　　Brent J. Lehman
Attorneys for Defendant,
RUSS CRUPNICK Inaccurately Named as
RUSSELL CRUPNICK

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**MOTION TO TRANSFER VENUE**

# DECLARATION OF BRENT J. LEHMAN

I, Brent J. Lehman, hereby declare as follows:

1.     I am an associate at Olivarez Madruga Lemieux O'Neill, LLP.  I have personal knowledge of the following matters, and if called upon to testify, I could and would competently testify thereto.

2.     I submit the following declaration in support of Defendant Russ Crupnick's ("Crupnick") Motion to Transfer Venue.

3.     On May 3, 2018, I met and conferred by telephone conference with Kevin Vick, counsel for Plaintiff, to discuss the content of this motion, pursuant to Local Rule 7-3.  We thoroughly discussed the issues contained in the motion but disagree on the merits.

4.     Attached as Exhibit 1 is a true and correct copy of the consulting agreement dated May 23, 2017 between Plaintiff and MusicWatch.

5.     Attached as Exhibit 2 is a true and correct copy of the complaint filed by Crupnick in the United State District Court, Eastern District of New York, Case No. 17-CV-07018 (DRH)(SIL) on December 1, 2017.

6.     Attached as Exhibit 3 is a true and correct copy of the amended complaint filed by Crupnick in the United State District Court, Eastern District of New York, Case No. 17-CV-07018 (DRH)(SIL) on March 22, 2018.

7.     Attached as Exhibit 4 is a true and correct copy of Interpret, LLC's Initial Disclosures, dated April 13, 2018.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  Executed May 14, 2018, in Los Angeles, California.

/s/ Brent J. Lehman
Brent J. Lehman

# EXHIBIT 1

CONSULTING AGREEMENT made between Music Watch, Inc. (MusicWatch) a New York Corporation, and Interpret LLC (Interpret) a California Limited Liability Corporation (parties), collectively the Agreement. The parties agree as follows:

1. <u>Engagement:</u> Interpret wishes to engage MusicWatch to perform certain business development services for Interpret, and agrees to perform certain services for MusicWatch, as described below.

2. <u>Term:</u> the term of this Agreement shall be May 1, 2017-December 31, 2018 with options for renewal upon mutual agreement. Parties may agree to extend the term on a month-to-month basis to complete any obligations under the Agreement. Subsequent to March 31, 2018 either party may terminate this Agreement with thirty (30) days written notice.

3. <u>MusicWatch Services & Obligations:</u> MusicWatch provides certain market research services to the music industry including audiocensus[SM], Monitor, Annual Music Study and custom research projects (collectively the "Services"). MusicWatch will make best efforts to generate over $1million in billings during each calendar year of this Agreement.
   a) MusicWatch will market the services to existing MusicWatch customers ("renewal clients").
   b) Parties will develop marketing programs to sell the services to "new clients".
   c) MusicWatch will oversee client service to renewal and new clients.
   d) MusicWatch will identify opportunities and sell Interpret services to renewal and new clients.
   e) MusicWatch will provide editorial oversight on all client deliverables covered under this Agreement to ensure that these deliverables are of high quality and meet with client satisfaction.

4. <u>Interpret Obligations:</u> Interpret will provide administrative, production and operational support for MusicWatch services as follows:
   a) Produce MusicWatch services including programming, weighting, fieldwork, tabulation, provision of software and software management including client deliverables; produce client reports and deliverables including PowerPoint decks; contribute to research design.
   b) Produce Interpret deliverables in support of 3d above.
   c) Obtain necessary licenses in support of 4a above.
   d) Provide qualified staff and administration needed to support MusicWatch services.
   e) Provide infrastructure for marketing support; e.g. list creation, website management, PR initiatives, blog and social media support.
   f) Interpret will make reasonable efforts to use existing MusicWatch vendors and methodologies in order to maintain MusicWatch tracking data trends; unless mutually agreed in writing.
   g) All work shall be of first rate quality and to the highest standards of the market research industry.

5. <u>Costs:</u> Interpret will be wholly responsibly for the following costs and will make timely payments to vendors:
   a) Production and marketing costs per 4 above.
   b) Vendor payments for, but not limited to, sample providers, software vendors and licenses, consultants and outside agencies needed to produce MusicWatch services.
   c) Interpret personnel assigned to work on MusicWatch services.
   d) Out-of-pocket travel and entertainment costs accrued by MusicWatch in the performance of this agreement. MusicWatch agrees to follow Interpret T&E policy at all times while performing this Agreement. MusicWatch will get prior written approval if monthly T&E expenses are anticipated to be over $1,000. T&E expenses will be billed in arrears at the end of each month and will be payable within 15 business days.

6. <u>Ownership:</u> all Services, research products, deliverables, methodologies, customer lists, brand and service names and marks, marketing lists, accumulated data and other IP shall be and will remain the sole and exclusive property of the respective owner (Property). At termination of the Agreement Interpret will return to MusicWatch all MusicWatch Property that existed as of April 30, 2017. Parties agree that new services or products specifically developed for MusicWatch during the term will be equally owned by Interpret and MusicWatch and subject to the royalty schedule below.

1

If the Agreement does not renew beyond December 2018, parties who sell jointly developed products will pay the other party 20% royalty of the gross billings for jointly developed products only for first 24 months, 10% over next 12 months. Royalties are payable 30 days after collection and subject to audit. Neither party shall alter the design or production specifications of the other's product without obtaining written approval.

7. <u>Fees Paid to Interpret:</u> MusicWatch will reimburse Interpret within 5 business days of collection and clearance of funds all fees billed to renewal clients after May 1, 2017 and through termination of this Agreement. MusicWatch will bill renewal clients on a mutually agreed schedule or as defined in current MusicWatch client agreements. Interpret will receive copies of all invoices billed to MusicWatch renewal clients as of May 1, 2017 and through termination of this Agreement. New clients may be billed by Interpret directly for the term of this agreement. MusicWatch will receive copies of Interpret invoices to all clients where MusicWatch is involved in the sale, through termination of this Agreement.

8. <u>Fees Paid to MusicWatch:</u>
   a. MusicWatch will be paid a consulting fee $10,000 per month for the period May-December 2017 ($80,000) payable 15 days after close of the month.
   b. MusicWatch will be paid a consulting fee $12,500 per month for the period January-December 2018 ($150,000) payable 15 days after the close of the month.
   c. Commissions as follows:
      i. 20% on MusicWatch service contracts executed and signed for the period beginning May 1, 2017 through December 31, 2017. Commissions will be paid after cash collections for billings exceed $400K during the period May 1, 2017-through and including December 31, 2017.
      ii. 15% on MusicWatch service contracts above base revenue of $450K in 2018
      iii. 3-5% on custom projects depending on gross margin (5% on 70%+, 3% on 65-69%)
      iv. New Media Measure: 5% of gross revenue on new contracts, 2.5% on renewals
      v. Gross margin defined as revenue minus direct costs (field and tab)
      vi. Should annualized run rate of MusicWatch contracts fall below $450K in 2018, MusicWatch will, by mutual agreement in writing either:
         1. Waive the first $20,000 in subsequent commissions (giveback), OR
         2. Reduce the monthly consulting fee to $10,000 commencing July 1, 2018 if billable revenues of either MusicWatch or Interpret services sold by MusicWatch are less than $225K through June 30, 2018.
      vii. Commissions will be billed by MusicWatch and payable within 15 days of Interpret's receipt of payment from clients.

9. <u>Renewal:</u> parties will meet no later than July 1, 2018 to agree terms for renewal beyond the term.

10. <u>"Interpret MusicWatch" Branding:</u> for convenience the parties may brand marketing as "Interpret MusicWatch" which is not a financial partnership or joint venture. During the term of this Agreement MusicWatch Managing Partner will exclusively use the title "SVP Interpret MusicWatch" in "go-to-market" positioning. Interpret will provide an email address for Russ Crupnick, MusicWatch Info and other MusicWatch consultants involved in execution of the obligations or services. Interpret will produce materials to support branding.

11. <u>Web & Email Hosting:</u> During the term of this Agreement Interpret agrees to host MusicWatch legacy email domain and the MusicWatch website and assume costs for same. Notwithstanding, the MusicWatch email files, MusicWatch website and musicwatchinc.com domain shall remain the property of MusicWatch.

12. <u>Service Continuation:</u> if, at the end of the term, the Agreement does not renew, parties will discuss the option of Interpret continuing to provide production services to MusicWatch, at a rate and for a period to be mutually agreed.

2

13. **Independent Contractor**: MusicWatch is, at all times, an independent contractor to Interpret and not an employee, agent, partner, or joint venture. MusicWatch is expected to commit a minimum of 37.5 hours per week to performance of this Agreement, excepting holidays and vacation. MusicWatch may engage in other consulting assignments without limitation so long as such assignments do not compete with Interpret nor interfere with MusicWatch's performance on this Agreement. For certainty, as an Independent Contractor, MusicWatch is solely responsible for all of its financial obligations and legal reporting requirements including but not limited to Federal, State and Local taxes as well as its business and office expenses.

14. **Confidentiality**: This Agreement is confidential. For the term of this Agreement and two years after its termination after parties agree to operate under the "mutual non-disclosure agreement" executed by the parties on March 2, 2017.

15. **Default**: A party will be in default of this Agreement due to non-payment of any sums due or failure to perform any obligations under this Agreement. The non-defaulting party shall provide written notice to the defaulting party who will have ten (10) days to cure.

16. **Assignment:** parties may not assign, subcontract or transfer obligations under this Agreement without prior written approval of the other party.

17. **Entire Agreement:** this constitutes the entire Agreement between the parties on this subject matter only and supersedes any or all prior agreements between the parties whether oral or written. No modification shall be binding except by written approval of both parties.

18. **Indemnities:** The parties will at all times indemnify and hold the other party, its officers, directors and employees harmless from and against any and all third party claims, damages, liabilities, costs and expenses, including reasonable counsel fees, arising out of or relating to any breach or alleged breach by that party of any representation, warranty or undertaking made herein; provided, however, that the party to be indemnified shall give prompt notice, cooperation and assistance to the indemnifying party relative to any such claim or suit, and provided further that no settlement of any such claim or suit shall be made without the prior consent of the indemnifying party.

19. **Legal Review:** parties agree to operate under this Agreement as written. If legal review or guidance is desired, parties agree to modify any terms for legal conformance however that will not change their obligations to perform under this Agreement. Each party is responsible for their own legal expenses.

20. **Miscellaneous:** Parties have the full power and legal right to execute and perform under this Agreement. This Agreement shall be construed in accordance with the laws of the State of New York without giving effect to its conflict of laws principles. Except where injunctive relief is sought, any controversy or claim arising out of or relating to this Agreement shall be settled by arbitration in the State of New York.

Agreed to and accepted by:                          Agreed to and accepted by:
For Interpret LLC                                   For Music Watch Inc.

Name: ANDREW L WING                                 Name: _____

Signature: _____                        Signature: _____

Title: CHAIRMAN                                      Title: Managing Partner

Date: MAY 22, 2017                                  Date: 5/23/17

3

# EXHIBIT 2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X

RUSS CRUPNICK,

        Plaintiff,

        -against-

INTERPRET LLC, ANDREW WING,
individually, GRANT JOHNSON, individually,
and MICHAEL CAI, individually,

        Defendants.

-----------------------------------------------------------------X

Case No.: _____

JURY TRIAL DEMANDED

## COMPLAINT

Plaintiff Russ Crupnick, by and through his undersigned counsel, Lazer, Aptheker, Rosella & Yedid, P.C., brings this action against defendants Interpret LLC ("Interpret"), Andrew Wing, Grant Johnson, and Michael Cai (collectively, the "Defendants"), and states as follows:

### NATURE OF ACTION

1.    This is an action for relief from Defendants' misclassification of Plaintiff as an "independent contractor," rather than as an "employee."

2.    By misclassifying Plaintiff as an independent contractor, Defendants have violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and New York Labor Law ("NYLL"), NYLL § 650, *et seq.*, by failing to pay Plaintiff overtime compensation for hours worked over forty (40) hours in each workweek. Through the misclassification, Defendants have improperly shifted Defendants' cost of doing business to Plaintiff by forcing Plaintiff to pay, and failing to reimburse Plaintiff, for vendor expenses owed by Defendants. Furthermore, by misclassifying Plaintiff as an independent contractor, Defendants seek to avoid various duties and obligations owed by Defendants to Plaintiff under state and federal law,

1

including payment of employer withholding taxes, the provision of employment benefits, the fulfillment of employment insurance and workers' compensation obligations, and the fulfillment of wage notice and wage statement requirements.

3.     Plaintiff seeks equitable relief and damages, including unpaid overtime wages, liquidated damages, additional liquidated damages where applicable, reimbursement of business expenses, statutory and civil penalties, interest, attorneys' fees and costs, and all other relief this Court deems just and proper.

## PARTIES

4.     Plaintiff is an individual residing in Suffolk County, New York.

5.     Upon information and belief, Interpret is a California limited liability company with its principal place of business located in Los Angeles, California.

6.     Upon information and belief, Interpret does business in New York and in this District.

7.     Upon information and belief, Andrew Wing ("Wing") is an individual residing in California.

8.     Upon information and belief, Grant Johnson ("Johnson") is an individual residing in California.

9.     Upon information and belief, Michael Cai ("Cai") is an individual residing in California.

## JURISDICTION AND VENUE

10.     Subject matter jurisdiction is proper pursuant to 28 U.S.C. § 1331 as this action arises under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*.

2

**24**

11.     The Court has supplemental jurisdiction over Plaintiff's related claims arising under state law pursuant to 28 U.S.C. § 1367(a).

12.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because Plaintiff worked for Defendants in Suffolk County, New York, where a substantial part of the events giving rise to Plaintiff's claims occurred.

## GENERAL ALLEGATIONS

13.     Interpret is in the business of performing cross-media market research across the media, technology, and entertainment sectors globally. Interpret's clients have included many Fortune 500 companies, including Disney, Netflix, Microsoft, and Twenty-First Century Fox.

14.     Upon information and belief, at all times relevant, Interpret had annual revenues from its operations of approximately $5,000,000 to $6,000,000.

15.     Plaintiff worked for Interpret performing market research and business development services in New York from in or around May 2017 through November 2017.

16.     Upon information and belief, Johnson is a partner and the Chief Executive Officer of Interpret.

17.     Upon information and belief, Cai is the president and a partner of Interpret.

18.     Upon information and belief, Wing was and is the chairman and a partner of Interpret.

19.     Upon information and belief, Johnson and Cai handle all day-to-day operations of Interpret and have the right to control all aspects of Interpret's operations.

20.     Upon information and belief, Wing, Johnson, and Cai have the power to hire and fire Interpret's employees and exercise authority and control of Interpret's employment policies.

3

**25**

21.     Upon information and belief, Wing, Johnson, and Cai have power over personnel and payroll decisions at Interpret.

22.     In or around March 2017, Johnson commenced discussions with Plaintiff related to Plaintiff's employment with Interpret performing market research services. Ultimately, Johnson requested that Wing finalize hiring discussions with Plaintiff.

23.     In or around early April 2017, Wing made an offer of employment to Plaintiff, pursuant to which Plaintiff would provide music analytics services to Interpret as a full-time employee.

24.     On or around May 23, 2017, Interpret entered into a consulting agreement ("Consulting Agreement") with MusicWatch, Inc. ("MusicWatch"), an entity solely owned and operated by Plaintiff, pursuant to which Plaintiff, through MusicWatch, would provide consulting services to Interpret as an independent contractor.

25.     The Consulting Agreement sets forth Plaintiff's work obligations and identifies that MusicWatch and, accordingly, Plaintiff, as MusicWatch's sole employee, was to work 37.5 hours per week performing services under the Consulting Agreement.

26.     Defendants now admit to misclassifying Plaintiff as an independent contractor of Interpret, even though Plaintiff was an employee.

27.     Defendants characterize the spirit of the parties' agreement as such that Plaintiff would be a full-time employee of Interpret (using an Interpret email address) under the Consulting Agreement, despite the independent contractor designation.

28.     During contract negotiations, the terms of Plaintiff's proposed employment agreement with Interpret were migrated over to an independent contractor contractual format.

4

**26**

Defendants acknowledge that there is no substantive difference between the terms of Plaintiff's full-time employment with Interpret and the terms of the Consulting Agreement.

29.     Defendants further admit that by classifying Plaintiff as an independent contractor of Interpret, the nature of Plaintiff's relationship with Interpret was identical to an employment relationship, except that Interpret would not provide benefits of employment to Plaintiff.

30.     Defendants' classification and treatment of Plaintiff throughout the period covered by this lawsuit as an "independent contractor," rather than as an "employee," is unlawful.

31.     The misclassification was to Plaintiff's detriment whereas Defendants failed to pay Plaintiff overtime compensation, to provide Plaintiff with employment benefits, to pay employer withholding taxes, and to reimburse Plaintiff for expenses incurred by Plaintiff on Defendants' behalf.

32.     As a result of Defendants' misclassifying Plaintiff as an "independent contractor," Defendants have regularly failed to pay Plaintiff one and a half times his regular rate of pay for all hours worked over forty (40) hours worked within a work week.

33.     Under the Consulting Agreement, Plaintiff was to be paid a set fee for his services of $10,000 per month for the period of May 2017 through the December 2017.

34.     During Plaintiff's tenure with Defendants, Defendants failed to pay Plaintiff in accordance with the fee schedule in the Consulting Agreement. Instead, Defendants only paid Plaintiff $40,000 for his services from May 2017 to the present.

35.     Plaintiff was typically required to work fifty (50) to seventy (70) hours per week performing services for Interpret.

36.     As a result of the payment scheme established by Defendants, Plaintiff was never paid time-and-a-half for hours worked over forty (40) hours in a single week.

37.     Consistent with an employment relationship, the Consulting Agreement also identifies that Interpret is wholly responsible for payments to vendors and requires Plaintiff to submit requests for reimbursement of out-of-pocket travel and entertainment costs in accordance with Interpret's Travel & Expense Guidelines for employees.

38.     Defendants have forced Plaintiff to make payments of $24,168.00 to Interpret's vendors and have failed to reimburse Plaintiff for such expenses.

39.     Despite Plaintiff's submission of requests for reimbursement to Defendants, Defendants have also failed to reimburse Plaintiff for travel and other employment-related expenses.

40.     Defendants have also failed to record the actual hours worked by Plaintiff and to furnish Plaintiff with annual wage notice and an accurate statement of wages, hours worked, rates paid, and gross wages in violation of NYLL.

41.     At all times relevant herein, Interpret did not pay employment taxes for and on behalf of Plaintiff as required by law.

42.     Defendant was, or should have been aware, that Plaintiff was performing work that required payment of overtime compensation.

43.     Defendant is a sophisticated company that does business globally and has access to counsel.

44.     Defendant's conduct as alleged herein was willful and in bad faith.

45.     Upon information and belief, Defendants Wing, Johnson, and Cai acted intentionally and maliciously, and are individual employers of Plaintiff pursuant to the FLSA, 20

6

**28**

U.S.C. § 203(d), as well as NYLL Sec. 2, and are therefore jointly and severally liable with Interpret and each other.

<div align="center">

**COUNT I**

**(Fair Labor Standards Act – Failure to Pay Overtime)**

</div>

46.     Plaintiff incorporates the allegations made in Paragraphs 1 through 45 as if stated herein.

47.     At all relevant times, Defendants have been employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a), by providing cross-media market research services globally, including in New York.

48.     Upon information and belief, at all relevant times, Interpret has had annual gross revenue in excess of $500,000.

49.     At all relevant times, Defendants employed Plaintiff within the meaning of the FLSA.

50.     During many weeks, Plaintiff was required to work over forty (40) hours per week.

51.     During such a week, Plaintiff was not compensated time-and-a-half for those hours worked over forty (40) hours in a work week.

52.     Defendants' failure to pay Plaintiff overtime compensation for which Plaintiff was entitled violated the FLSA, 29 U.S.C. § 201, *et seq*.

53.     As a result of Defendants' failure to record, report, credit and/or compensate Plaintiff, Defendants have failed to make, keep and preserve records with respect to Plaintiff

<div align="center">

7

**29**

</div>

sufficient to determine the wages, hours, and other conditions and practices of employment in violation of the FLSA.

54.     Defendant's conduct constitutes a willful violation of the FLSA, within the meaning of 29 U.S.C. § 255(a).

55.     Due to Defendants' willful violations of the FLSA, Plaintiff is entitled to recover from Defendants his unpaid overtime compensation, liquidated damages, additional liquidated damages for unreasonable delayed payment of wages, penalties available under applicable law, reasonable attorneys' fees and costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b)).

## COUNT II

### (New York Labor Law – Failure to Pay Overtime)

56.     Plaintiff incorporates the allegations made in Paragraphs 1 through 55 as if stated herein.

57.     At all relevant times, Defendants have been an "employer" engaged in interstate commerce and/or the production of goods for commerce, within the meaning of NYLL.

58.     At all relevant times, Plaintiff was employed by Defendants within the meaning of NYLL §§ 2 and 651.

59.     Plaintiff was a non-exempt employee entitled to be paid overtime compensation for all overtime hours worked under the NYLL and supporting regulations.

60.     Defendants willfully violated Plaintiff's rights by failing to pay him overtime compensation at rates not less than one and one-half times the regular rate of pay for each hour worked in excess of forty (40) hours in a workweek, in violation of NYLL and its applicable regulations.

8

**30**

61.    The foregoing conduct constitutes a willful violation of NYLL without a good faith or reasonable basis.

62.    Due to Defendants' NYLL violations, Plaintiff is entitled to recover from Defendants his unpaid overtime compensation, liquidated damages, additional liquidated damages for unreasonable delayed payment of wages, penalties available under applicable law, reasonable attorneys' fees, and costs and disbursement of the action, pursuant to NYLL § 663(1).

## COUNT III

### (New York Labor Law §§ 190, 193, 195,198 and 663)

63.    Plaintiff incorporates the allegations made in Paragraphs 1 through 62 as if stated herein.

64.    At all times relevant, Plaintiff was employed by Defendants within the meaning of NYLL.

65.    Defendants willfully violated Plaintiff's rights under NYLL § 190, *et seq.*, including NYLL § 193, by requiring Plaintiff to incur expenses for Defendants' benefit without reimbursement for payments to Defendants' vendors and other travel and employment-related expenses, while Plaintiff was performing work for Defendants. The required and unreimbursed expenses incurred by Plaintiff for the benefit of Defendants were unlawful deductions from the wages of Plaintiff in violation of NYLL § 193.

66.    Defendants willfully failed to provide Plaintiff with the notice(s) required by NYLL § 195(1) within ten (10) business days of the commencement of Plaintiff's employment and at all relevant times thereafter, and Plaintiff is therefore entitled to and seeks to recover in this action the maximum recovery for this violation, plus attorneys' fees and costs pursuant to NYLL § 198.

9

**31**

67.    At all times relevant, Defendants willfully failed to provide Plaintiff with the statement(s) required by NYLL § 195(3), and Plaintiff is therefore entitled to and seeks to recover in this action the maximum recovery for this violation, plus attorneys' fees and costs pursuant to NYLL § 198.

68.    Due to these violates, Plaintiff is entitled to recover from Defendants deductions from his wages, including reimbursement of expenses, liquidated damages, penalties available under applicable law, attorneys' fees and costs of this action, and pre-judgment and post-judgment interest.

## DEMAND FOR JUDGMENT

WHEREFORE, Plaintiff demands judgment in his favor against Defendants as follows: (1) on his First Cause of Action, award Plaintiff his unpaid overtime compensation due under the FLSA, together with maximum liquidated damages, costs and attorneys' fees pursuant to 29 U.S.C. § 216(b); (2) on his Second Cause of Action, award Plaintiff his unpaid overtime compensation due under the New York Minimum Wage and the regulations thereunder including 12 NYCRR § 142-2.2, together with maximum liquidated damages, interest, costs and attorneys' fees pursuant to NYLL § 663; (3) on his Third Cause of Action, award Plaintiff reimbursement for unlawful deductions, statutory damages, maximum liquidated damages, interest, and maximum recovery for violations of NYLL § 195(1) and NYLL § 195(3), reasonable attorneys'

*(Remainder of this page intentionally left blank)*

10

**32**

fees and costs of this action, pursuant to NYLL § 190, *et seq.*; and (4) for such other and further

relief as this Court may deem just, proper, and equitable.

Dated: Melville, New York
     December 1, 2017

                                   LAZER, APTHEKER, ROSELLA
                                     & YEDID, P.C.

                                By: _____
                                     RUSSELL L. PENZER (RLP-6736)
                                   *Attorneys for Plaintiff*
                                   225 Old Country Road
                                   Melville, New York 11747
                                   Phone: (631) 761-0848
                                   Fax: (631) 761-0726
                                   Email: penzer@larypc.com

11

**33**

## Complaints and Other Initiating Documents

1:17-cv-07018 Crupnick v. Interpret LLC et al

### U.S. District Court

### Eastern District of New York

### Notice of Electronic Filing

The following transaction was entered by Penzer, Russell on 12/1/2017 at 5:16 PM EST and filed on 12/1/2017

**Case Name:**        Crupnick v. Interpret LLC et al
**Case Number:**     1:17-cv-07018
**Filer:**                 Russ Crupnick
**Document Number:** 1
**Judge(s) Assigned:**  The Court will contact you shortly on the Judge Assignment.

**Docket Text:**
**COMPLAINT against All Defendants filing fee $ 400, receipt number 0207-10019622 Was the Disclosure Statement on Civil Cover Sheet completed -YES,, filed by Russ Crupnick. (Attachments: # (1) Civil Cover Sheet, # (2) Proposed Summons) (Penzer, Russell)**

**1:17-cv-07018 Notice has been electronically mailed to:**

Russell L. Penzer     penzer@larypc.com, fox@larypc.com, Franzella@larypc.com

**1:17-cv-07018 Notice will not be electronically mailed to:**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP NYEDStamp_ID=875559751 [Date=12/1/2017] [FileNumber=12366521-0]
[892215309c8c36394b7a08f8f1ed4b2263fbe6ab9fd71264719780a3c52d52ea09ab
4b97655e4bc4b5bf72622ec89db4083206dd28814d123e2b275d35fbf066]]
**Document description:**Civil Cover Sheet
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP NYEDStamp_ID=875559751 [Date=12/1/2017] [FileNumber=12366521-1]
[55dfaa755aaea6d568509e48e0db94a1acebd55a187a715c9d9bf10582c29a486d80
9d36509d8391a63379cdf6e93eeffc9e4f5db96c5d840ab40319bf77182b]]
**Document description:**Proposed Summons
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP NYEDStamp_ID=875559751 [Date=12/1/2017] [FileNumber=12366521-2]
[586e2d6f304c1995fb40a39992ff77fc3b88e5d8e8e18145e61136b1b3cfc247c4fa
26feded34ffa9733be85d96f6b3685df9f15f455f3d2e76a3ecf20af1ebd]]

# EXHIBIT 3

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
RUSS CRUPNICK,

             Plaintiff,

-against-

                                   Case No.: 17-CV-07018
                                   (DRH) (SIL)

INTERPRET LLC, ANDREW WING,              JURY TRIAL DEMANDED
individually, GRANT JOHNSON, individually,
and MICHAEL CAI, individually,

             Defendants.
------------------------------------------------------------X

## AMENDED COMPLAINT

      Plaintiff Russ Crupnick, by and through his undersigned counsel, Lazer, Aptheker,

Rosella & Yedid, P.C., brings this action against defendants Interpret LLC ("Interpret"), Andrew

Wing, Grant Johnson, and Michael Cai (collectively, the "Defendants"), and states as follows:

### NATURE OF ACTION

      1.     This is an action for relief from Defendants' misclassification of Plaintiff as an

"independent contractor," rather than as an "employee" and retaliation against Plaintiff.

      2.     By misclassifying Plaintiff as an independent contractor, Defendants have

violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*., and New York Labor

Law ("NYLL"), NYLL § 650, *et seq.*, by failing to pay Plaintiff overtime compensation for

hours worked over forty (40) hours in each workweek. Through the misclassification,

Defendants have improperly shifted Defendants' cost of doing business to Plaintiff by forcing

Plaintiff to pay, and failing to reimburse Plaintiff, for vendor expenses owed by Defendants.

Furthermore, by misclassifying Plaintiff as an independent contractor, Defendants seek to avoid

various duties and obligations owed by Defendants to Plaintiff under state and federal law,

including payment of employer withholding taxes, the provision of employment benefits, the fulfillment of employment insurance and workers' compensation obligations, and the fulfillment of wage notice and wage statement requirements.

3.     Prior to the commencement of this action, Plaintiff's counsel informed Defendant's counsel of its potential federal and state employment law violations. In response, Interpret retaliated against Plaintiff by commencing an arbitration against Plaintiff in the State of California. Following commencement of an action in New York state court to stay the arbitration on grounds that, *inter alia*, Plaintiff is not a party to any arbitration agreement with Interpret, Interpret discontinued its baseless claims in arbitration against Plaintiff.

4.     Thereafter, following commencement of this action on December 1, 2017, and just days after filing its answer in this action, Interpret further retaliated against Plaintiff by commencing an action in the Los Angeles County Superior Court against Plaintiff. By retaliating against Plaintiff, Defendants have violated the FLSA, 29 U.S.C. § 215(a)(3), and NYLL § 215.

5.     Plaintiff seeks equitable relief and damages, including unpaid overtime wages, liquidated damages, additional liquidated damages where applicable, reimbursement of business expenses, statutory and civil penalties, interest, attorneys' fees and costs, and all other relief this Court deems just and proper. Plaintiff further seeks punitive damages and emotional distress damages in connection with Defendants' unlawful retaliation.

## PARTIES

6.     Plaintiff is an individual residing in Suffolk County, New York.

7.     Upon information and belief, Interpret is a California limited liability company with its principal place of business located in Los Angeles, California.

8. Upon information and belief, Interpret does business in New York and in this District.

9. Upon information and belief, Andrew Wing ("Wing") is an individual residing in California.

10. Upon information and belief, Grant Johnson ("Johnson") is an individual residing in California.

11. Upon information and belief, Michael Cai ("Cai") is an individual residing in California.

### JURISDICTION AND VENUE

12. Subject matter jurisdiction is proper pursuant to 28 U.S.C. § 1331 as this action arises under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*.

13. The Court has supplemental jurisdiction over Plaintiff's related claims arising under state law pursuant to 28 U.S.C. § 1367(a).

14. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because Plaintiff worked for Defendants in Suffolk County, New York, where a substantial part of the events giving rise to Plaintiff's claims occurred.

### GENERAL ALLEGATIONS

15. Interpret is in the business of performing cross-media market research across the media, technology, and entertainment sectors globally. Interpret's clients have included many Fortune 500 companies, including Disney, Netflix, Microsoft, and Twenty-First Century Fox.

16. Upon information and belief, at all times relevant, Interpret had annual revenues from its operations of approximately $5,000,000 to $6,000,000.

17.     Plaintiff worked for Interpret performing market research and business development services in New York from in or around May 2017 through November 2017.

18.     Upon information and belief, Johnson is a partner and the Chief Executive Officer of Interpret.

19.     Upon information and belief, Cai is the president and a partner of Interpret.

20.     Upon information and belief, Wing was and is the chairman and a partner of Interpret.

21.     Upon information and belief, Johnson and Cai handle all day-to-day operations of Interpret and have the right to control all aspects of Interpret's operations.

22.     Upon information and belief, Wing, Johnson, and Cai have the power to hire and fire Interpret's employees and exercise authority and control of Interpret's employment policies.

23.     Upon information and belief, Wing, Johnson, and Cai have power over personnel and payroll decisions at Interpret.

24.     In or around March 2017, Johnson commenced discussions with Plaintiff related to Plaintiff's employment with Interpret performing market research services. Ultimately, Johnson requested that Wing finalize hiring discussions with Plaintiff.

25.     In or around early April 2017, Wing made an offer of employment to Plaintiff, pursuant to which Plaintiff would provide music analytics services to Interpret as a full-time employee.

26.     On or around May 23, 2017, Interpret entered into a consulting agreement ("Consulting Agreement") with MusicWatch, Inc. ("MusicWatch"), an entity solely owned and operated by Plaintiff, pursuant to which Plaintiff, through MusicWatch, would provide consulting services to Interpret as an independent contractor.

4

**38**

27.     The Consulting Agreement sets forth Plaintiff's work obligations and identifies that MusicWatch and, accordingly, Plaintiff, as MusicWatch's sole employee, was to work 37.5 hours per week performing services under the Consulting Agreement.

28.     Defendants now admit to misclassifying Plaintiff as an independent contractor of Interpret, even though Plaintiff was an employee.

29.     Defendants characterize the spirit of the parties' agreement as such that Plaintiff would be a full-time employee of Interpret (using an Interpret email address) under the Consulting Agreement, despite the independent contractor designation.

30.     During contract negotiations, the terms of Plaintiff's proposed employment agreement with Interpret were migrated over to an independent contractor contractual format. Defendants acknowledge that there is no substantive difference between the terms of Plaintiff's full-time employment with Interpret and the terms of the Consulting Agreement.

31.     Defendants further admit that by classifying Plaintiff as an independent contractor of Interpret, the nature of Plaintiff's relationship with Interpret was identical to an employment relationship, except that Interpret would not provide benefits of employment to Plaintiff.

32.     Defendants' classification and treatment of Plaintiff throughout the period covered by this lawsuit as an "independent contractor," rather than as an "employee," is unlawful.

33.     The misclassification was to Plaintiff's detriment whereas Defendants failed to pay Plaintiff overtime compensation, to provide Plaintiff with employment benefits, to pay employer withholding taxes, and to reimburse Plaintiff for expenses incurred by Plaintiff on Defendants' behalf.

34.     As a result of Defendants' misclassifying Plaintiff as an "independent contractor," Defendants have regularly failed to pay Plaintiff one and a half times his regular rate of pay for all hours worked over forty (40) hours worked within a work week.

35.     Under the Consulting Agreement, Plaintiff was to be paid a set fee for his services of $10,000 per month for the period of May 2017 through the December 2017.

36.     During Plaintiff's tenure with Defendants, Defendants failed to pay Plaintiff in accordance with the fee schedule in the Consulting Agreement. Instead, Defendants only paid Plaintiff $40,000 for his services from May 2017 to the present.

37.     Plaintiff was typically required to work fifty (50) to seventy (70) hours per week performing services for Interpret.

38.     As a result of the payment scheme established by Defendants, Plaintiff was never paid time-and-a-half for hours worked over forty (40) hours in a single week.

39.     Consistent with an employment relationship, the Consulting Agreement also identifies that Interpret is wholly responsible for payments to vendors and requires Plaintiff to submit requests for reimbursement of out-of-pocket travel and entertainment costs in accordance with Interpret's Travel & Expense Guidelines for employees.

40.     Defendants have forced Plaintiff to make payments of $45,668.00 to Interpret's vendors and have failed to reimburse Plaintiff for such expenses.

41.     Despite Plaintiff's submission of requests for reimbursement to Defendants, Defendants have also failed to reimburse Plaintiff for travel and other employment-related expenses.

**40**

42.     Defendants have also failed to record the actual hours worked by Plaintiff and to furnish Plaintiff with annual wage notice and an accurate statement of wages, hours worked, rates paid, and gross wages in violation of NYLL.

43.     At all times relevant herein, Interpret did not pay employment taxes for and on behalf of Plaintiff as required by law.

44.     Defendant was, or should have been aware, that Plaintiff was performing work that required payment of overtime compensation.

45.     Defendant is a sophisticated company that does business globally and has access to counsel.

46.     Defendant's conduct as alleged herein was willful and in bad faith.

47.     Upon information and belief, Defendants Wing, Johnson, and Cai acted intentionally and maliciously, and are individual employers of Plaintiff pursuant to the FLSA, 20 U.S.C. § 203(d), as well as NYLL Sec. 2, and are therefore jointly and severally liable with Interpret and each other.

48.     In or around November 2017, Plaintiff's counsel informed Interpret's in-house counsel, Jonathan Mitchell, Esq., of Interpret's violations of state and federal employment law by misclassifying Plaintiff as an independent contractor.

49.     Immediately after receiving notice of Interpret's violations of the FLSA, Interpret commenced an arbitration proceeding against Plaintiff in the State of California. Subsequently, Plaintiff was dismissed from the arbitration as an improper party.

50.     The original Complaint in this action was filed on December 1, 2017.

51.     Immediately after filing their Answers in this action, Defendants, in a blatant act of retaliation, commenced vexatious litigation against Plaintiff in Los Angeles County Superior

Court entitled <u>Interpret LLC v. Russell Crupnick and DOES 1-20</u>, Case No.: BC697518, alleging claims of intentional interference with contractual relations, intentional interference with prospective economic relations, negligent interference with prospective economic relations, conversion, unjust enrichment, actual intent to defraud a creditor, constructive fraudulent transfer, violations of California's Business and Professional Code, intentional misrepresentation, and negligent misrepresentation (the "California Action").

52.     Tellingly, Defendants did not assert any counterclaims against Plaintiff in this action, their sole purpose in commencing the California Action against Plaintiff in a foreign jurisdiction being to needlessly harass and further retaliate against Plaintiff for commencing this action.

53.     As a result of Defendants' retaliatory conduct, Plaintiff has suffered compensatory and emotional distress damages.

<div align="center">

**COUNT I**

**(Fair Labor Standards Act – Failure to Pay Overtime)**

</div>

54.     Plaintiff incorporates the allegations made in Paragraphs 1 through 53 as if stated herein.

55.     At all relevant times, Defendants have been employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a), by providing cross-media market research services globally, including in New York.

56.     Upon information and belief, at all relevant times, Interpret has had annual gross revenue in excess of $500,000.

<div align="center">8</div>

57.     At all relevant times, Defendants employed Plaintiff within the meaning of the FLSA.

58.     During many weeks, Plaintiff was required to work over forty (40) hours per week.

59.     During such a week, Plaintiff was not compensated time-and-a-half for those hours worked over forty (40) hours in a work week.

60.     Defendants' failure to pay Plaintiff overtime compensation for which Plaintiff was entitled violated the FLSA, 29 U.S.C. § 201, *et seq.*

61.     As a result of Defendants' failure to record, report, credit and/or compensate Plaintiff, Defendants have failed to make, keep and preserve records with respect to Plaintiff sufficient to determine the wages, hours, and other conditions and practices of employment in violation of the FLSA.

62.     Defendant's conduct constitutes a willful violation of the FLSA, within the meaning of 29 U.S.C. § 255(a).

63.     Due to Defendants' willful violations of the FLSA, Plaintiff is entitled to recover from Defendants his unpaid overtime compensation, liquidated damages, additional liquidated damages for unreasonable delayed payment of wages, penalties available under applicable law, reasonable attorneys' fees and costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b)).

## COUNT II

### (New York Labor Law – Failure to Pay Overtime)

64.     Plaintiff incorporates the allegations made in Paragraphs 1 through 63 as if stated herein.

9

43

65.    At all relevant times, Defendants have been an "employer" engaged in interstate commerce and/or the production of goods for commerce, within the meaning of NYLL.

66.    At all relevant times, Plaintiff was employed by Defendants within the meaning of NYLL §§ 2 and 651.

67.    Plaintiff was a non-exempt employee entitled to be paid overtime compensation for all overtime hours worked under the NYLL and supporting regulations.

68.    Defendants willfully violated Plaintiff's rights by failing to pay him overtime compensation at rates not less than one and one-half times the regular rate of pay for each hour worked in excess of forty (40) hours in a workweek, in violation of NYLL and its applicable regulations.

69.    The foregoing conduct constitutes a willful violation of NYLL without a good faith or reasonable basis.

70.    Due to Defendants' NYLL violations, Plaintiff is entitled to recover from Defendants his unpaid overtime compensation, liquidated damages, additional liquidated damages for unreasonable delayed payment of wages, penalties available under applicable law, reasonable attorneys' fees, and costs and disbursement of the action, pursuant to NYLL § 663(1).

## COUNT III

### (New York Labor Law §§ 190, 193, 195,198 and 663)

71.    Plaintiff incorporates the allegations made in Paragraphs 1 through 70 as if stated herein.

72.    At all times relevant, Plaintiff was employed by Defendants within the meaning of NYLL.

73.    Defendants willfully violated Plaintiff's rights under NYLL § 190, *et seq.*, including NYLL § 193, by requiring Plaintiff to incur expenses for Defendants' benefit without reimbursement for payments to Defendants' vendors and other travel and employment-related expenses, while Plaintiff was performing work for Defendants. The required and unreimbursed expenses incurred by Plaintiff for the benefit of Defendants were unlawful deductions from the wages of Plaintiff in violation of NYLL § 193.

74.    Defendants willfully failed to provide Plaintiff with the notice(s) required by NYLL § 195(1) within ten (10) business days of the commencement of Plaintiff's employment and at all relevant times thereafter, and Plaintiff is therefore entitled to and seeks to recover in this action the maximum recovery for this violation, plus attorneys' fees and costs pursuant to NYLL § 198.

75.    At all times relevant, Defendants willfully failed to provide Plaintiff with the statement(s) required by NYLL § 195(3), and Plaintiff is therefore entitled to and seeks to recover in this action the maximum recovery for this violation, plus attorneys' fees and costs pursuant to NYLL § 198.

76.    Due to these violations, Plaintiff is entitled to recover from Defendants deductions from his wages, including reimbursement of expenses, liquidated damages, penalties available under applicable law, attorneys' fees and costs of this action, and pre-judgment and post-judgment interest.

## **COUNT IV**

### **(Fair Labor Standards Act – Retaliation)**

77.    Plaintiff incorporates the allegations made in Paragraphs 1 through 76 as if stated herein.

78.     Plaintiff filed a complaint or instituted a proceeding against Defendants within the meaning and scope of 29 U.S.C. § 215(a)(3) by filing the initial complaint in this action on December 1, 2017.

79.     Defendants' behavior towards Plaintiff since the filing of the initial complaint, including the commencement of the California Action against Plaintiff, constitutes retaliation in violation of 29 U.S.C. § 215(a)(3).

80.     Due to Defendants' illegal retaliation, Plaintiff is entitled to legal and equitable relief, including but not limited to, enjoining Defendants from further retaliation, emotional distress damages, and additional amounts such as liquidated damages, interest, reasonable attorneys' fees, and costs and disbursements of this action pursuant to 29 U.S.C. § 216(b).

## COUNT V

### (New York Labor Law – Retaliation)

81.     Plaintiff incorporates the allegations made in Paragraphs 1 through 80 as if stated herein.

82.     Plaintiff instituted a proceeding against Defendants within the meaning and scope of NYLL § 215 by filing the initial complaint in this action on December 1, 2017.

83.     Defendants' behavior towards Plaintiff since the filing of the initial complaint, including the commencement of the California Action against Plaintiff, constitutes retaliation in violation of NYLL § 215.

84.     Due to Defendants' illegal retaliation, Plaintiff is entitled to all appropriate relief, including, but not limited to, enjoining Defendants from further retaliation, emotional distress damages, and additional amounts such as liquidated damages, interest, reasonable attorneys' fees, and costs and disbursements of this action pursuant to NYLL § 215.

12

## DEMAND FOR JUDGMENT

WHEREFORE, Plaintiff demands judgment in his favor against Defendants as follows: (1) on his First Cause of Action, award Plaintiff his unpaid overtime compensation due under the FLSA, together with maximum liquidated damages, costs and attorneys' fees pursuant to 29 U.S.C. § 216(b); (2) on his Second Cause of Action, award Plaintiff his unpaid overtime compensation due under the New York Minimum Wage and the regulations thereunder including 12 NYCRR § 142-2.2, together with maximum liquidated damages, interest, costs and attorneys' fees pursuant to NYLL § 663; (3) on his Third Cause of Action, award Plaintiff reimbursement for unlawful deductions, statutory damages, maximum liquidated damages, interest, and maximum recovery for violations of NYLL § 195(1) and NYLL § 195(3), reasonable attorneys' fees and costs of this action, pursuant to NYLL § 190, *et seq*.; (4) on his Fourth Cause of Action, enjoin Defendants from further retaliation against Plaintiff and award Plaintiff emotional distress damages, together with maximum liquidated damages, costs, and attorneys' fees pursuant to 29 U.S.C. § 216(b); (5) on his Fifth Cause of Action, enjoin Defendants from further retaliation against Plaintiff and award Plaintiff emotional distress damages, together with maximum liquidated damages, costs, and attorneys' fees pursuant to NYLL 215; and (6) for such other and further relief as this Court may deem just, proper, and equitable.

Dated: Melville, New York
     March 22, 2018

           LAZER, APTHEKER, ROSELLA
            & YEDID, P.C.

           By: */s/ Russell L. Penzer*
              RUSSELL L. PENZER (RLP-6736)
           *Attorneys for Plaintiff*
           225 Old Country Road
           Melville, New York 11747
           Phone: (631) 761-0848
           Fax: (631) 761-0726
           Email: penzer@larypc.com

**Index No. 2:17-CV-07018**

---

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

═══════════════════════════════════════════════════

RUSS CRUPNICK,

                                             Plaintiff,

        - against -

INTERPRET LLC, ANDREW WING, individually, GRANT JOHNSON, individually,
and MICHAEL CAI, individually,

                                             Defendants.

═══════════════════════════════════════════════════

## AMENDED COMPLAINT

═══════════════════════════════════════════════════

**LAZER, APTHEKER, ROSELLA & YEDID, P.C.**
*Attorneys for Plaintiff*
**ATTORNEYS AT LAW**
**MELVILLE LAW CENTER**
**225 OLD COUNTRY ROAD**
**MELVILLE, NEW YORK 11747**
**(631) 761-0800**

# EXHIBIT 4

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
— — — — — — — — — — — — — — — — — — — — — — — —   x

RUSS CRUPNICK,

                        Plaintiff,                  Case No. 2:17-CV-07018
                                               (DRH)(SIL)

    -against-

INTERPRET LLC, ANDREW WING,
individually, GRANT JOHNSON, individually,
and MICHAEL CAI, individually,

                        Defendants.
— — — — — — — — — — — — — — — — — — — — — — — —   x

## INTERPRET, LLC'S INITIAL DISCLOSURES
## PURSUANT TO FED. R. CIV. P. 26(a)(1)

Pursuant to Federal Rule of Civil Procedure 26(a)(1), defendant Interpret, LLC ("Interpret") by its attorney Ruskin Moscou Faltischek, P.C., makes the following initial disclosures:

### QUALIFICATIONS

This Initial Disclosure Statement is based upon information reasonably available to Interpret at the present time. This Initial Disclosure Statement is made without prejudice to future disclosure, identification or production of information or documents that were inadvertently omitted from this Initial Disclosure Statement or that may be discovered following the date of this Initial Disclosure Statement.

Interpret hereby expressly reserves all objections to the use for any purpose of this Initial Disclosure Statement or any of the information and documents referred to herein in this case or any other case or proceeding.

By identifying categories of documents in this Initial Disclosure Statement, Interpret does not waive its right to object to the disclosure of any information on the basis of the attorney-client privilege, the work-product doctrine or any other applicable protection or immunity from disclosure.

## INITIAL DISCLOSURES

A.  The following witnesses are likely to have discoverable information that Interpret may use to support its defenses, without regard to potential cumulativeness:

1.  Interpret, LLC, c/o Ruskin Moscou Faltischek, P.C., 1425 RXR Plaza, Uniondale, New York 11556, (516) 663-6600 (Interpret's agreement(s), relationship, and communications with plaintiff and plaintiff's employer MusicWatch).

2.  Andrew Wing, c/o Kauff, McGuire & Margolis LLP, 950 Third Avenue, 14th Floor, New York, New York 10022, (212) 644-1010 (Interpret's agreement(s), relationship, and communications with plaintiff and plaintiff's employer MusicWatch).

3.  Grant Johnson, c/o Kauff, McGuire & Margolis LLP, 950 Third Avenue, 14th Floor, New York, New York 10022, (212) 644-1010 (Interpret's

agreement(s), relationship, and communications with plaintiff and plaintiff's employer MusicWatch).

4.     Michael Cai, c/o Kauff, McGuire & Margolis LLP, 950 Third Avenue, 14th Floor, New York, New York 10022, (212) 644-1010 (Interpret's agreement(s), relationship, and communications with plaintiff and plaintiff's employer MusicWatch).

5.     Grant Robb, Interpret, LLC c/o Ruskin Moscou Faltischek, P.C., 1425 RXR Plaza, Uniondale, New York 11556, (516) 663-6600 (Interpret's agreement(s), relationship, and communications with plaintiff and plaintiff's employer MusicWatch).

6.     Jason Coston, Interpret, LLC c/o Ruskin Moscou Faltischek, P.C., 1425 RXR Plaza, Uniondale, New York 11556, (516) 663-6600 (Interpret's relationship and communications with plaintiff and plaintiff's employer MusicWatch).

7.     Sammer Aly Interpret, LLC c/o Ruskin Moscou Faltischek, P.C., 1425 RXR Plaza, Uniondale, New York 11556, (516) 663-6600 (Interpret's relationship and communications with plaintiff and plaintiff's employer MusicWatch).

8.     The NPD Group, 900 West Shore Road, Port Washington, New York 11050, (516) 625-0700 (plaintiff's motives for insisting on an

independent contractor agreement, plaintiff's former employment and health benefits).

9.     Coleman Insights, 909 Aviation Parkway, Suite 400, Morrisville, North Carolina, 27560, (919) 571 0000 (plaintiff's work as an independent contractor).

10.    Warren Kurtzman, c/o Coleman Insights, 909 Aviation Parkway, Suite 400, Morrisville, North Carolina, 27560, (919) 571 0000 (plaintiff's prior and similar arrangements as an independent contractor).

11.    Josh Bell, 1539 Sunrise Avenue, Raleigh, North Carolina 27608, (310) 990-8009 (former employee of MusicWatch, Interpret, and Coleman Insights with knowledge of plaintiff's prior and similar arrangements as an independent contractor).

12.    Meghan Campbell, c/o Coleman Insights, 909 Aviation Parkway, Suite 400, Morrisville, North Carolina, 27560, (919) 571 0000 (former MusicWatch employee with knowledge of plaintiff's prior and similar arrangements as an independent contractor).

13.    Katie Dombrowski, MusicWatch c/o Lazer, Aptheker, Rosella & Yedid, P.C., 225 Old Country Road, Melville, New York 11747, (631) 761-0848 (current MusicWatch employee with knowledge of MusicWatch's operation as an independent contractor).

14.    Jodie Crupnick, MusicWatch c/o Lazer, Aptheker, Rosella & Yedid, P.C., 225 Old Country Road, Melville, New York 11747, (631) 761-0848 (current MusicWatch employee with knowledge of MusicWatch's operation as an independent contractor).

15.    Russ Crupnick, c/o Lazer, Aptheker, Rosella & Yedid, P.C., 225 Old Country Road, Melville, New York 11747, (631) 761-0848 (Interpret's agreement(s), relationship, and communications with plaintiff and plaintiff's employer MusicWatch).

16.    Country Music Association, 35 Music Square East, Suite 201, Nashville, Tennessee 37203, (615) 244-2840 (former, current, or potential MusicWatch client with knowledge of MusicWatch's operation as an independent contractor).

17.    Pandora Media Inc., 2100 Franklin Street, Suite 700, Oakland, California 94612, (510) 451-4100 (former, current, or potential MusicWatch client with knowledge of MusicWatch's operation as an independent contractor).

18.    Spotify USA Inc., 45 W. 18th Street, 7th Floor, New York, New York, 10011, (917) 565-3894 (former, current, or potential MusicWatch client with knowledge of MusicWatch's operation as an independent contractor).

19.    Recording Industry Association of America, 1025 F Street NW, Washington, DC 20004, (202) 775-0101 (former, current, or potential

MusicWatch client with knowledge of MusicWatch's operation as an independent contractor).

20. Sony Music Entertainment, 25 Madison Avenue, New York, New York 10010, (212) 833-8000 (member of Recording Industry Association of America with knowledge of MusicWatch's operation as an independent contractor).

21. Universal Music Group, 1755 Broadway #6, New York, New York 10019, (212) 841-8000 (member of Recording Industry Association of America with knowledge of MusicWatch's operation as an independent contractor).

22. Warner Music Group, 1633 Broadway, New York, New York 10019, (212) 275-2000 (member of Recording Industry Association of America with knowledge of MusicWatch's operation as an independent contractor).

Interpret reserves its right to supplement this list of witnesses, to call at trial or for deposition any additional or different witnesses, including rebuttal and impeachment witnesses, or to present additional or different testimony from those witnesses set forth above if the need for such additional or different witnesses or testimony arises.

B. The following categories of documents may be used by Interpret:

1. Agreements between the parties.

2. Draft agreements negotiated by the parties.

3. Agreements with MusicWatch.

4.     Agreements between MusicWatch and other individuals or companies, including but not limited to Coleman Research, MusicWatch vendors, and MusicWatch clients.

5.     Correspondence between the parties.

6.     Correspondence between any of the parties and MusicWatch employees.

7.     Correspondence between any of the parties and MusicWatch vendors.

8.     Correspondence between any of the parties and MusicWatch clients.

9.     Correspondence and documents related to plaintiff's prior and similar independent contractor arrangements.

10.    Documents related to plaintiff's employee benefits with The NPD Group.

11.    Work-product by both parties.

12.    Vendor invoices issued to MusicWatch.

13.    MusicWatch invoices to clients.

14.    Documents relating to payments to MusicWatch and plaintiff.

Interpret reserves its right to supplement this list of document-categories. Interpret also reserves the right to use at trial any documents designated by plaintiff.

C.    Interpret has not filed any counterclaims or cross-claims in this case. Interpret is entitled to its costs and expenses incurred in this case, including reasonable attorneys' fees. Interpret reserves its right to supplement its calculation of damages.

D.    At this time, Interpret is unaware of insurance contracts providing coverage for plaintiff's claims. Interpret reserves its right to supplement this disclosure if/when insurance information becomes available.

Dated:      Uniondale, New York
            April 13, 2018

                                RUSKIN MOSCOU FALTISHEK, P.C.

                          By: _____
                                Mark S. Mulholland
                                Ross J. Kartez
                                *Attorney for Defendant Interpret, LLC*
                                1425 RXR Plaza
                                Uniondale, New York 11556
                                (516) 663-6600
                                Fax: (516) 663-6601
                                Email: mmulholland@rmfpc.com
                                Email: rkartez@rmfpc.com

To:

LAZER, APTHEKER, ROSELLA
& YEDID, P.C.
Russell L. Penzer, Esq.
*Attorneys for Plaintiff*
225 Old Country Road
Melville, New York 11747
(631) 761-0848
Fax: (631) 761-0726
Email:  panzer@larypc.com

KAUFF, MCGUIRE
& MARGOLIS LLP
Michele Coyne, Esq.
*Attorney for Andrew Wing,*
*Grant Johnson and Michael Cai*
950 Third Avenue, 14th Floor
New York, New York 10022
(212) 644-1010
Fax: (212) 644-1936
Email:  coyne@kmm.com

**PROOF OF SERVICE**

**By Electronic Service**

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

      I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and am not a party to the within action. My business address is 500 South Grand Avenue – 12th Floor, Los Angeles, CA 90071.

      On May 14, 2018, I served a true and correct copy of the foregoing document entitled:

**DEFENDANT'S MOTION TO TRANSFER VENUE; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF BRENT J. LEHMAN AND EXHIBITS THERETO**

on the interested parties in this action by placing the document in a sealed envelope and addressed as follows:

| | |
|---|---|
| Kevin L. Vick<br>Jean-Paul Jassy<br>Jassy Vick Carolan LLP<br>800 Wilshire Boulevard – Suite 800<br>Los Angeles, CA  90017 | Attorneys for Plaintiff<br>Tel:   (310) 870-7048<br>Fax:   (310) 870-7010 |

☒   **(BY CM/ECF).** The document was served via The United States District Court-Central District's CM/ECF electronic transfer system which generates a Notice of Electronic Filing (NEF) upon the parties, the assigned judge and any registered users in the case.

☒   **As Indicated on the above Service List, by Electronic Filing and Service Pursuant to General Rule Order 10-07:** I caused the document(s) listed above to be served via the Court's Electronic Filing System upon the counsel on the service list.

☐   **BY MAIL:** I am readily familiar with the firm's business practice for collection and processing of correspondence for mailing with the United States Postal Service. I know that the correspondence is deposited with the United States Postal Service on the same day this declaration was executed in the ordinary course of business. I know that the envelope was sealed and, with postage thereon fully prepaid, placed for collection and mailing on this date, following ordinary business practices, in the United States mail at Los Angeles, CA.

☒   (Federal) I declare that I am employed in the office of a member of the bar of this court at whose discretion the service was made. I declare under penalty of perjury that the above is true and correct.

Executed on May 14, 2018, at Los Angeles, CA.

Marti Hale
_____      _____
Printed Name                                   Signature